IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WILLIAM J. HOYT and TIMOTHY BROWDER, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Court File No.: 05 C 1256 |
| ARROW FINANCIAL SERVICES LLC | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARROW FINANCIAL SERVICES LLC'S MOTION TO COMPEL ARBITRATION OF TIMOTHY BROWDER'S CLAIMS AND TO STAY PROCEEDINGS PENDING THE COMPLETION OF ARBITRATION**

Defendant Arrow Financial Services LLC ("Arrow"), by and through its attorneys Scott Douglas Burke, Lynne McNeill and David M. Schultz and for its Memorandum of Law in Support of its Motion to Compel Arbitration and to Stay Proceedings Pending the Completion of Arbitration states as follows:

## I. INTRODUCTION

Plaintiffs filed a class action lawsuit against Arrow Financial Services LLC alleging that Arrow violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 ("FDCPA") and Mass G.L. Ch. 93a in sending plaintiffs a collection letter containing a privacy disclosure. (Am. Compl., ¶¶36-7). Arrow sent a collection letter to Plaintiff Timothy Browder ("Browder") for collection of his defaulted Tweeter account. Arrow purchased Browder's defaulted credit card account from GE pursuant to an assignment. Browder's claims are subject to arbitration because the Cardholder Agreement governing his Tweeter Account contains an Arbitration Provision and Browder agreed to arbitrate any claims arising from or relating to the use of his Tweeter credit card. Accordingly, under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1 *et seq.*, this action

must be stayed and Browder must be compelled to arbitrate his individual claims. In addition, Browder's class action allegations should be dismissed as moot because the arbitration provision applicable to his account prohibits class actions.

## II. FACTS

Timothy Browder opened a Tweeter credit card Account number 6030 0902 0447 3732 (the "Account") on or about November 10, 2002. (Affidavit of Martha Koehler attached hereto as Exhibit 1, ¶6).  GE is currently the issuer of the Tweeter credit card ("Card"). (Ex. 1, ¶4). The Card is a private label credit card which enables individuals to finance purchases of good and services at Tweeter stores throughout the United States. (Ex. 1, ¶4). Individuals seeking to obtain a Card can apply in person at a Tweeter store, where they are given a written application to fill out. (Ex. 1, ¶5). Attached to the written application is a copy of the Credit Card Agreement ("Agreement"), which contains the terms and conditions that will govern the individual's credit card account with GE. Tweeter personnel contact GE for approval and, if the individual is approved, he or she is given a credit card account and a credit card is mailed to them. (Ex. 1, ¶5).

Timothy Browder applied for the Account at Tweeter Store #103 in Newton, Massachusetts. (Ex. 1, ¶6). Pursuant to the procedure for in-store applications, a copy of the Agreement was attached to the Application and given to Mr. Browder when he applied for the Card. The Agreement contains the terms and conditions that govern the customer's credit card account with GE. (Ex. 1, ¶6)(a copy of the Agreement is attached as Exhibit A to Exhibit 1).

Mr. Browder's initial purchase on the account was on November 10, 2002 in the amount of $10,000. (Ex. 1, ¶8). In December 2003, Mr. Browder's Tweeter account number was changed from account number 6030 0902 0447 3732 to account number 6030 0902 0480 4761.

-9901v1

(Ex. 1, ¶8).  Mr. Browder's last payment on the account was made on or about January 8, 2004 in the amount of $371.00.  (Ex. 1, ¶8).  Mr. Browder's account was charged off by GE on August 16, 2004.  (Ex. 1, ¶9).

The GE Agreement contains an Arbitration Provision which provides that either party[1] may elect to compel arbitration of a "Claim" or "Claims" between the parties.  The term "Claim" is defined as follows:

> As used in this Arbitration Provision, the term "Claim" or "Claims" means any claim, dispute or controversy between you and us arising from or relating to this Cardholder Agreement (the "Agreement"), any prior agreement that you may have had with us or the relationships resulting from the Agreement or any prior agreement, including the validity, enforceability or scope of this Arbitration Provision, the Agreement or any prior agreement.  "Claim" or "Claims" includes claims of every kind and nature, between you and us;  including but not limited to initial  claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud, and other intentional torts, constitution, statute, regulation, common law and equity (including any claim for injunctive or declaratory relief).  The term "Claim or "Claims" is to be given the broadest possible meaning and includes by way of example and without limitation any claim, dispute or controversy between you and us that arises from or relates to (a) the credit card account ("Account") created by the Agreement or any prior agreement or any balances on the Account, (b) the goods or services (including insurance or extended service contracts, if any) charged to the Account, (c) advertisements, promotions or oral or written statements related to the Account, goods or services financed under the Account or the terms of financing, (d) your application for the Account and (e) the origination or servicing of the Account or any prior agreement and the collection of amounts owed by you to us.

> This Arbitration Provision will not apply to Claims previously asserted, or which are later asserted, in lawsuits filed before the effective date of this Arbitration Provision or any prior arbitration provision between you and us, whichever is earlier.  However, this Arbitration Provision will apply to all other Claims even if the facts and circumstances giving rise to the Claims existed before the effective date of this Arbitration Provision.  (Ex. A to Ex. 1).

---

[1] The Agreement states in relevant part: "In this Agreement and in your billing statement ("Statement"), "we", "us", and "our" refer to GE Capital Consumer Card Co., 5300 Kings Island Drive, Mason, OH 45040, our assignees, or other holders of this Agreement or your Account.

-9901v1

The Arbitration Provision specifies that Browder can choose to have the American Arbitration Association, ("AAA"), JAMS or the National Arbitration Forum ("NAF"), arbitrate his claims. (Ex. A to Ex. 1 at ¶18).

The Arbitration Provision expressly disclosed to Browder and other Tweeter cardholders, among other things, that:

> IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES, FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIMS SUBJECT TO ARBITRATION: EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.   THE FEES CHARGED BY THE ARBITRATION ADMINISTRATOR MAY BE GREATER THAN THE FEES CHARGED BY A COURT. (Ex. A to Ex. 1, ¶18).

The Arbitration Provision reiterates that "[t]here shall be no authority for any Claims to be arbitrated on a class action basis." (Ex. A to Ex. 1, ¶18). The Arbitration Provision also states that it was "made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 *et seq.*" (Ex. A to Ex. 1, ¶20).

The last known address for Timothy Browder is 163 Gerry Road, Chestnut Hill, MA 02467-3185. (Ex. 1, ¶10). GE's current mailing address of record for Mr. Browder is c/o Jerome Lamet, 542 South Dearborn, Suite 1260, Chicago, IL 60605. (Ex. 1, ¶10). Prior to charge off, GE regularly uses the U.S. mail to send monthly billing statements to Browder and other GE cardholders located throughout the United States. (Ex. 1, ¶10). Browder and other cardholders located throughout the United States regularly use the U.S. mail to remit payments to GE at a payment center located in Louisville, Kentucky. (Ex. 1, ¶10). GE sold Browder's account to

-9901v1

Arrow pursuant to an assignment on or about September 16, 2004. (Ex. 1, ¶11, Affidavit of Brian Cutler attached hereto as Exhibit 2, ¶5).

### III. ARGUMENT

Federal law strongly favors the arbitration of disputes and requires that federal courts rigorously enforce arbitration agreements. *Moses H. Cone Mem'l Hosp. v, Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); *Baggeson v. American Skandia Life Assurance Corp.,* 235 F.Supp.2d 30, 31 (D.Mass. 2002). Any doubts concerning the scope of an arbitration agreement and the issues arbitrable thereunder should be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v, Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). Generally, so long as a litigant can effectively vindicate his cause of action through arbitration, the courts will uphold an arbitration clause. *Mattox v. Decision One Mortgage Company, LLC,* 2002 WL 31121087 (D.Mass. Sept. 26, 2002), *citing Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991). On a motion to compel arbitration and stay proceedings under the FAA, a court's inquiry is limited to whether the parties agreed to arbitrate their dispute in accordance with the terms of the agreement. *See* 9 U.S.C. §4; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985).

### A. Browder's Is Bound By The Arbitration Clause

Timothy Browder applied for the Account at Tweeter Store #103 in Newton, Massachusetts. (Ex. 1, ¶6). Pursuant to the procedure for in-store applications, a copy of the Agreement was attached to the Application and given to Mr. Browder when he applied for the Card. The Agreement contains the terms and conditions that govern the customer's credit card account with GE. (Ex. 1, ¶6)( Exhibit A to Exhibit 1). The Application was approved and Mr. Browder was issued a credit card. His initial purchase on the card was made on November 10,

5

2002 in the amount of $10,000. (Ex. 1, ¶8). Browder agreed to the terms and conditions of the Agreement including the Arbitration Provision. The Agreement provides, "When you submit your Application for this Account, you agree to be bound by this Agreement." (Ex. A to Ex. 1, ¶2). In addition, arbitration clauses contained in standard form contracts for credit cards and other consumer transactions are regularly enforced. *See Hoefs v. CACV of Colorado, LLC*, 365 F.Supp.2d 69 (D.Mass. 2005).

### B. <u>Browder's Claims Fall Within The Scope Of The Agreement</u>

Browder's allegations are covered by the Arbitration Provision. The Arbitration Provision applies to any "Claim" which is defined broadly as:

> [A]ny claim, dispute or controversy between you and us arising from or relating to this Cardholder Agreement (the "Agreement"), any prior agreement that you may have had with us or the relationships resulting from the Agreement or any prior agreement, including the validity, enforceability or scope of this Arbitration Provision, the Agreement or any prior agreement. "Claim" or "Claims" includes claims of every kind and nature, between you and us; including but not limited to initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud, and other intentional torts, constitution, statute, regulation, common law and equity (including any claim for injunctive or declaratory relief). The term "Claim or "Claims" is to be given the broadest possible meaning and includes by way of example and without limitation any claim, dispute or controversy between you and us that arises from or relates to (a) the credit card account ("Account") created by the Agreement or any prior agreement or any balances on the Account, (b) the goods or services (including insurance or extended service contracts, if any) charged to the Account, (c) advertisements, promotions or oral or written statements related to the Account, goods or services financed under the Account or the terms of financing, (d) your application for the Account and (e) the origination or servicing of the Account or any prior agreement and the collection of amounts owed by you to us. (Ex. A to Ex. 1, ¶1).

The Agreement defines "we", "us", and "our" as "GE Capital Consumer Card Co., 5300 Kings Island Drive, Mason, OH 45040, our assignees, or other holders of this Agreement or your Account." (Ex. A to Ex. 1, ¶1). Arrow is a party to the Arbitration Agreement because Arrow purchased the Account from GE pursuant to an assignment. (Ex. 2 at ¶5). Plaintiff acknowledges

-9901v1

that Arrow is in the business of buying bad debts. (Am. Compl, ¶6). As an assignee of GE and pursuant to the contract language, Arrow has the right to enforce the terms of the Agreement, including the Arbitration Provision and Browder is bound by the terms of the Agreement. *See Hoefs v. CACV of Colorado, LLC*, 365 F.Supp.2d 69 (D.Mass. 2005)(enforcing arbitration clause as to credit card issuers assigns, which included debt collection agency).

The allegations made by Browder in the Amended Complaint fall within the purview of the Arbitration Provision. The Complaint alleges that Arrow violated the FDCPA when it sent Browder a collection letter seeking to collect the Tweeter account. The letter identifies the account as Browder's Tweeter Account #6030 0902 0480 4761. (Ex. B to Compl). Browder's claims regarding the collection of his Tweeter account arise from (1) Browder's Agreement with GE, (2) the relationships resulting from that Agreement including Arrow's purchase of Browder's account pursuant to an assignment, (3) the balance on Browder's account and (4) the collection of that account balance.

In addition, the Supreme Court has instructed that federal statutory claims are subject to arbitration unless Congress itself has expressed an intent to preclude arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The burden of establishing that Congress intended to preclude arbitration of a statutory claim rests on the party seeking to avoid arbitration. *Id.* That intention can only be demonstrated through the statutory text or legislative history or through an "inherent conflict" between arbitration and the statute's underlying purposes, keeping in mind that questions of arbitrability must be addressed with a healthy regard for the strong federal policy favoring arbitration. *Id.*

Finally, the FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce... shall be valid, irrevocable and enforceable, save

7

-9901v1

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The FAA defines "commerce" as "commerce among the several states." 9 U.S.C. §1. Browder's Tweeter agreement involves interstate commerce. The Agreement was entered between GE Capital Consumer Card Co., ("GECCC"), n/k/a GE Money Bank, ("GEMB") a wholly owned subsidiary of General Electric Capital Corporation and Timothy Browder, an individual residing in Massachusetts. (Ex. A to Ex. 1, ¶2, Complaint at ¶4). GEMB is located in Salt Lake City, Utah. Prior to charge off, GE uses the U.S. mail to send monthly billing statements to Browder and other GE cardholders located in the United States. (Ex. A to Ex. 1, ¶10). Browder, a Massachusetts resident, made payments on his Tweeter card to a payment center located in Kentucky. Browder's last payment on the account was made on or about January 8, 2004 in the amount of $371.00. (Ex. 1, ¶8).

Since the transactions creating Browder's account and the payments thereunder involve interstate commerce and arise out of Browder's obligations under the Agreement, and Arrow is an assignee of GE, Browder should be required to arbitrate his claims as to Arrow.

## C. **Browder's Class Action Allegations Should Be Dismissed As Moot And The Case Stayed Pending Arbitration**

The Arbitration Provision in Browder's Agreement provides that if a party to the agreement elects to arbitrate a claim, the claim cannot proceed as a class action. The Arbitration Provisions states "[t]here shall be no authority for any Claims to be arbitrated on a class action basis." (Ex. A to Ex. 1). Under the FAA, arbitration agreements must be strictly enforced in accordance with their terms. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 151 L.E.2d 755,122 S. Ct. 754, 764 (2002). Accordingly, class-wide arbitration cannot be enforced where the agreement expressly prohibits it or even where the agreement is merely silent on the issue. *See Caudle v. American Arbitration Ass'n*, 230 F.3d 920 (7th Cir. 2000); *Iowa Grain Co. v. Brown*,

8

171 F.3d 504 (7th Cir. 1999).  The unavailability in arbitration of procedural devices such as class action suits does not relieve a party of an obligation to arbitrate under a valid arbitration agreement.  *Mattox v. Decision One Mortgage Company*, LLC, 2002 WL 31121087 (D.Mass. Sept. 26, 2002).

In addition, where a case involves both arbitrable and non-arbitrable claims, whether the non-arbitrable claims should be stayed pending resolution of the arbitrable claims is generally discretionary with the court.  *Baggensen v. American Skandia Life Assurance*, 235 F.Supp.2d 30 (D.Mass. 2002).  In this case, the allegations of plaintiffs Hoyt and Browder are identical. Plaintiffs complaint about the identical language in collection letters they received.  Accordingly, the arbitrator's disposition of Browder's claims may affect Hoyt's claims.  Under these circumstances, it is appropriate to stay the entire case pending the arbitration of Browder's claims.  In addition, the class claims as to Browder should be dismissed since a class action is prohibited under his Tweeter Agreement.

WHEREFORE, Arrow Financial Services LLC respectfully requests that this Court grant its Motion to Compel Arbitration with respect to plaintiff Timothy Browder and enter an Order (a) compelling plaintiff Browder to arbitrate his individual claims in accordance with the arbitration agreement between the parties, (b) stay the action pending the arbitration of Browder's claims and  (b) dismiss Browder's class action allegations as moot.

-9901v1

Respectfully submitted,
ARROW FINANCIAL SERVICES, LLC
By its attorneys,

**MORRISON MAHONEY LLP**

*/s/ Burke*
_____
Scott Douglas Burke, BBO # 551255
Lynne McNeill, BBO #644721
250 Summer Street
Boston, MA 02110
(617) 439-7500

Daniel A. Edelman, Esq.
Cathleen M. Combs, Esq.
James O. Latturner, Esq.
Francis R. Greene, Esq.
**EDELMAN, COMBS & LATTURNER, LLC**
120 S. LaSalle Street, Suite 1800
Chicago, IL 60603
(312) 739-4200

-9901v1

EXHIBIT NO. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WILLIAM J. HOYT and TIMOTHY    )
BROWDER    )
    )
       Plaintiff,    )
    )   Case No. 05 C 10560
   vs.    )
    )
ARROW FINANCIAL SERVICES LLC,    )
    )
       Defendant.    )
    )
    )

## AFFIDAVIT OF MARTHA KOEHLER

The undersigned, Martha Koehler, being duly sworn, deposes and states as follows:

1.    I have been employed at GE Consumer Finance ("GECF") from 1979 to the present. I am currently Manager of Litigation Support at GECF. I am familiar with the facts set forth in this Affidavit, through personal knowledge and/or review of corporate records. It is the practice of GECF to make and keep its business records in the course of regularly conducted business activity.

2.    GECF administers and services the credit card accounts of GE Money Bank ("GEMB"), formerly known as GE Capital Consumer Card Co., ("GECCCC"), a wholly owned subsidiary of General Electric Capital Corporation. GEMB is a federal savings bank regulated by the Office of Thrift Supervision and insured by the Federal Deposit Insurance Corporation. GEMB is located in Salt Lake City, Utah. GECF, GEMB and GECCCC are collectively referred herein as "GE."

3.    My duties at GE include, among other things, researching the account histories of GE credit card holders.

4.    GE is currently the issuer of the Tweeter credit card ("Card"). The Card is a private label credit card which enables individuals to finance purchases of goods and services at Tweeter stores throughout the United States.

5.    Individuals seeking to obtain a Card can apply in person at a Tweeter store, where they are given a written application to fill out. Attached to the written application is a copy of the Credit Card Agreement ("Agreement"), which contains the terms and conditions that will govern the individual's credit card account with GE. Tweeter personnel contact GE for approval and, if the individual is approved, he or she is given a credit card account and a credit card is mailed to them.

6.    Timothy Browder opened Account number 6030 0902 0447 3732 on or about November 10, 2002. Mr. Browder applied for the Account at Tweeter Store #103 in Newton, Massachusetts. Pursuant to the procedure for in-store applications, a copy of the Agreement was attached to the Application and given to Mr. Browder when he applied for the Card. The Agreement contains the terms and conditions that govern the customer's credit card account with GE.

7.    Attached hereto as Exhibit A is a true and correct copy of the form of Agreement that was in effect when Browder's Application was approved.

8.    Mr. Browder's initial purchase on the account was on November 10, 2002 in the amount of $10,000. In December 2003, Mr. Browder's Tweeter account number was changed from account number 6030 0902 0447 3732 to account number 6030 0902 0480 4761. Mr. Browder's last payment on the account was made on or about January 8, 2004 in the amount of $371.00.

9.    Mr. Browder's account was charged off by GE on August 16, 2004.

10. The last known address for Timothy Browder is 163 Gerry Road, Chestnut Hill, MA 02467-3185. GE's current mailing address of record for Mr. Browder is c/o Jerome Lamet, 542 South Dearborn, Suite 1260, Chicago, IL 60605. Prior to charge off, GE regularly uses the U.S. mail to send monthly billing statements to Browder and other GE cardholders located throughout the United States. Browder and other cardholders located throughout the United States regularly use the U.S. mail to remit payments to GE at a payment center located in Louisville, Kentucky.

11. GE sold Browder's account to Arrow on or about September 16, 2004.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 19, 2005.

FURTHER AFFIANT SAYETH NOT.

Martha Koehler

Sworn to and subscribed before
me this the 19 day of July.

Notary Public

My Commission Expires: 8/19/06

TONYA WILLIAMS
Notary Public - State of Kansas
My Appt. Exp. 8/19/06

# EXHIBIT NO. A

CREDIT CARD AGREEMENT
RETAIL INSTALLMENT CREDIT AGREEMENT
Nonapplicable Consumer Note

1. **GENERAL.** This Agreement ("Agreement") governs the use of your Account. In this Agreement, "you" and "your" refer to each person who signed the Application, and all persons who are obligated on the Account. "We," "us," "our" and "GE" refer to GE Capital Consumer Card Co.

2. **PROMISE TO PAY.** When you submit your Application for this Account, you agree to be bound by this Agreement. You promise to pay us for all credit extended on your Account...

3. **FINANCE CHARGE.**

A. **STANDARD RATE.** In all states, except PR, when your Account has a standard rate...

B. **DELINQUENCY RATE.** In all states except PR, a fixed daily periodic rate...

(1)

## FEDERAL AND STATE NOTICES

### MARYLAND RESIDENTS

### NEW JERSEY RESIDENTS

### OHIO RESIDENTS

### PUERTO RICO RESIDENTS

### NOTICE TO APPLICANT

### RETAIL INSTALLMENT CREDIT AGREEMENT

### YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

### IMPORTANT INFORMATION - PLEASE READ

Consumer Card Program
GE Capital Consumer Card Co.

### Privacy Policy

EXHIBIT NO. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM J. HOYT and TIMOTHY BROWDER, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )    Court File No.: 05 C 1256 |
| | ) |
| ARROW FINANCIAL SERVICES LLC | ) |
| | ) |
| Defendant. | ) |

### AFFIDAVIT OF BRIAN CUTLER

I, Brian Cutler, having been first duly sworn on oath, depose and state that I have personal knowledge of the facts listed below and if called to testify, could and would testify as to the following:

1.     I am the Executive Vice President and Chief Technology Officer at Arrow Financial Services LLC, ("Arrow") 5996 W. Touhy Ave., Niles, IL  60714.

2.     I am over 18 years of age, am of sound mind, and I could testify competently to the facts stated herein.

3.     I am familiar with the facts set forth in this Affidavit, through personal knowledge and/or review of corporate records.

4.     I am familiar with the allegations made by Timothy Browder and have reviewed the allegations in the above-captioned Complaint.

5.     Arrow purchased Timothy Browder's defaulted Tweeter Credit Card Account referenced in the above-captioned Complaint from GE Money Bank f/k/a GE Capital Consumer Card Co., on or about September 16, 2004 pursuant to an assignment.

5858585v1 847423

SWORN AND SUBSCRIBED before me on this _28th_ day of _July_, 2005

by _Brian Cutler_, who is personally known to me.

_Walterine McElroy_

NOTARY PUBLIC

State of _Illinois_

"OFFICIAL SEAL"
WALTERINE McELROY
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSIC      11/20/2006

5858585v1 847423